# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MICHAEL S. DUSTIN,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:11-cv-622 |

Michael S. Dustin seeks judicial review of the decision of the Commissioner of Social Security denying Mr. Dustin's application for Supplemental Security Income under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. After a careful review of the record and for the reasons discussed below, the court finds that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

## BACKGROUND

**I.      Procedural History**

Mr. Dustin filed his social security application on June 30, 2008. He claimed that, as of June 16, 2008, he was disabled due to depression, personality disorder, and other mental problems. His application was denied initially and on reconsideration. Mr. Dustin requested a hearing, which was held on May 4, 2010, in front of Administrative Law Judge Patricia C. Henry. Judge Henry denied Mr. Dustin's claim and the Appeals Council denied Mr. Dustin's request for review. Mr. Dustin then filed this appeal.

## II. Factual Background

Mr. Dustin was forty-three years old at the time of Judge Henry's decision. He has completed the first year of either college or a technical school. (R. at 29.) Mr. Dustin cannot remember the last time he was employed, but it was probably before 2003 at Randy's Engine Machine. (R. at 30.)

Mr. Dustin has a history of antisocial behavior. (R. at 13.) Before graduating high school in 1985, he was arrested for assault with a deadly weapon at age seventeen and for automobile theft at age eighteen. (R. at 13.) In 1988, Mr. Dustin was convicted of attempted murder. (*Id.*) After his release, Mr. Dustin started his own computer business and designed, built, and repaired computer systems. (R. at 29.) The business eventually ceased operations. (R. at 258.) In 2002, he was convicted of cultivating and distributing marijuana. (R. at 13.) In 2007, he was convicted of possession of marijuana and methamphetamine. (*Id.*) Mr. Dustin spent another three weeks in prison in May 2008 after testing positive on a urinalysis. (*Id.*)

Mr. Dustin alleges that he has been disabled since June 16, 2008, due to mental impairments and depression. (R. at 11, 13.) Mr. Dustin claims that the primary reason he can no longer work is that, due to his mental condition, he has trouble focusing and concentrating and has difficulty interacting with authority figures. (R. at 31.)

### A. Medical Evidence

Mr. Dustin saw numerous physicians from 2007 to 2010. The court has reviewed Mr. Dustin's medical record and describes Mr. Dustin's medical visits in chronological order.

Mr. Dustin saw Dr. Michael Smith on July 31, 2007. (R. at 267.) During his visit, Mr. Dustin related that he had participated in a dual diagnosis program at Central Utah Counseling

Center, where he received treatment for depression, marijuana dependence, and antisocial personality disorder. (R. at 14, 267.) Dr. Smith noted that Mr. Dustin responded favorably to the treatment, even though Mr. Dustin was not on any medication. (R. at 267.)

On June 16, 2008, Mr. Dustin entered the hospital after having suicidal thoughts and suffering from depression. (R. at 14.) Dr. Sam Coates examined Mr. Dustin and determined that he had a Global Assessment Functioning (GAF) score of twenty-five.[1] (R. at 240.) This score indicated that Mr. Dustin was unable to function in almost all areas. Mr. Dustin began taking the anti-depressant Celexa and his mood stabilized. (*Id.*) He was discharged on June 19, 2008. (R. at 14.) At the time of discharge, Mr. Dustin's GAF score was fifty, which indicates serious impairment.[2] (R. at 240.)

Mr. Dustin saw Brandon Christensen on July 7, 2008, to obtain a clinical evaluation for his disability application and to begin counseling. (R. at 257.) Mr. Christensen reported that Mr. Dustin's speech was "normal in flow and in volume" and that Mr. Dustin "maintained appropriate eye contact and responded appropriately to the interviewer's questions. (*Id.*) According to Mr. Christensen, Mr. Dustin "appeared to be of average or above average intelligence," had "an exaggerated sense of superiority," and felt "the laws, rules, and consequences of society should not be applied to him." (*Id.*) Mr. Christensen diagnosed Mr.

---

[1] The Global Assessment of Function scale is a numeric scale from one through one hundred. The scale is used by mental health physicians and doctors to rate social, occupational, and psychological functioning of adults. A score of twenty-one to thirty indicates the patient's behavior is influenced by one of three things: (1) delusions or hallucinations; (2) serious impairment in communication or judgment (*e.g.*, sometimes incoherent, grossly inappropriate acts, and suicidal preoccupation); or (3) the inability to function in almost all areas (*e.g.*, stays in bed all day, has no job, home, or friends). (Pl.'s Brief, at 3, Dkt. No. 13.)

[2] A GAF score of 41-50 indicates serious impairment. (Pl.'s Brief, at 3.)

Dustin with a GAF score of forty-five at the time of the examination, and believed that Mr. Dustin's highest GAF score in the previous year was sixty. (R. at 259.)

Dr. Spencer Scoville examined Mr. Dustin on July 15, 2008, and diagnosed Mr. Dustin with bipolar disorder with anger outbursts. (R. at 249.) Mr. Dustin told Dr. Scoville that he had an outburst at Workforce Services the week before. (*Id.*) During a follow-up meeting on August 15, 2008, Mr. Dustin stated that he continued to use Celexa. (R. at 247.) Mr. Dustin also reported that he was not having any manic or major depressive episodes. (*Id.*)

On September 3, 2008, Mr. Dustin had a follow-up appointment with Dr. Smith. (R. at 255.) Mr. Dustin appeared to be "fairly happy" about his domestic situation at the time and was in the process of applying for social security benefits. (*Id.*) Mr. Dustin was "calm and cooperative" during the interview and "interacted comfortably." (*Id.*) Dr. Smith scheduled another follow-up visit and continued Mr. Dustin on Celexa. (*Id.*)

On October 2, 2008, Dr. Nancy Cohn reviewed Mr. Dustin's records as part of his application for disability benefits. (R. at 16.) Dr. Cohn is a state agency psychological consultant. (*Id.*) Based on her review of the records, Dr. Cohn stated that Mr. Dustin could work with limited public contact. (*Id.*)

Dr. Kenneth Wallis, a state agency psychological consultant, also reviewed Mr. Dustin's records. (*Id.*) Dr. Wallis determined that Mr. Dustin had psychosis not otherwise specified, major depressive disorder, antisocial personality disorder with obsessive compulsive features, and cannabis dependency, which was in remission. (*Id.*) Dr. Wallis stated that Mr. Dustin could perform low stress, unskilled or semi-skilled work with minimal public contact. (*Id.*) He also noted that Mr. Dustin had moderate limitations on his ability to concentrate for extended periods.

(R. at 236.)

On November 14, 2008, Mr. Dustin met with Mr. Christensen again. (R. at 274.) Mr. Dustin reported that he was feeling "much better" and had a reduction of many symptoms. (*Id.*)

On March 25, 2009, Mr. Dustin followed up with Dr. Smith. (R. at 293.) Mr. Dustin reported that he was doing "much better," and Dr. Smith noted that Mr. Dustin responded favorably to medication. (*Id.*) Additionally, Dr. Smith completed a Mental Capacity Assessment. (R. at 282.) The Assessment documented a number of Mr. Dustin's limitations. (*Id.*) Dr. Smith stated that Mr. Dustin had extreme limitations in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances." (*Id.*) Dr. Smith further noted extreme limitations in Mr. Dustin's ability to "sustain an ordinary routine without special supervision," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them." (R. at 282-83.) Finally, Dr. Smith wrote that Mr. Dustin would miss four or more days of work every month. (R. at 283.)

Dr. Smith had another appointment with Mr. Dustin on April 30, 2009. (R. at 290.) Mr. Dustin stated that he was doing "a little better" and indicated that the Celexa was "quite effective." (*Id.*) Mr. Dustin noted that he sometimes lost patience and responded in an angry manner towards people around him. (*Id.*) But Mr. Dustin displayed enthusiasm when showing Dr. Smith the computer creations he put together. (*Id.*) The two met again on June 10, 2009. (R. at 287.) Mr. Dustin said he was "doing good" and his relationships with others were gradually improving. (*Id.*)

Prior to another meeting with Dr. Smith on July 22, 2009, Mr. Dustin had thoughts of

ending his life. (R. at 285.) But Mr. Dustin gave no indication during the meeting that he would harm himself. (*Id.*) Mr. Dustin did not wear shoes to the meeting, but Dr. Smith noted that it was not unusual for Mr. Dustin to come to his appointments without shoes. (*Id.*) Mr. Dustin stated that he wanted to get back on Celexa but could not afford the co-pay. (*Id.*) Dr. Smith believed Mr. Dustin had "some good plans for the future and [Mr. Dustin talked] a lot about implementing" them. (*Id.*) Dr. Smith did note that Mr. Dustin appeared "a little bit sad." (*Id.*)

In early 2010, Mr. Dustin began seeing Dr. Mark Rindflesh in Wyoming. (R. at 298.) Dr. Rindflesh diagnosed Mr. Dustin with major depressive disorder and increased Mr. Dustin's dosage of Celexa. (*Id.*) During follow up meetings in February and April, Mr. Dustin stated he was "doing better." (R. at 296-97.) Mr. Dustin stated he was "not looking for an out" by applying for disability benefits, but that he "want[ed] to use [the benefits] to invest in going to school and fine tune [his] computer skills." (R. at 298.)

B.     Testimonial Evidence

The court has reviewed the transcript of the May 4, 2010, hearing before Judge Henry and finds that Judge Henry accurately summarized Mr. Dustin's testimony in her decision. (R. at 11-21.) The court highlights a few points from the hearing transcript.

Mr. Dustin testified that he cannot work because he has difficulty interacting with authority figures and has trouble concentrating. (R. at 31.) Mr. Dustin acknowledged he should be taking Celexa but could not afford to do so. (R. at 32.) Additionally, Mr. Dustin testified that at one time he designed, built, and repaired computer systems. (R. at 29.) The vocational expert testified that a person with Mr. Dustin's background and residual functional capacity could not perform this type of work. (R. at 40.) But the expert testified that such a person could perform

6

other work in the national economy. (R. at 40-41.)

ANALYSIS

## I. Standard of Review

The court reviews the Commisioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence "requires more than a scintilla but less than a preponderance." *Id.* It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Further, the court "will not reweigh the evidence or substitute [its own] judgment for the Commissioner's . . . [and] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (citation omitted).

## II. Judge Henry's Decision

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

A person seeking Social Security benefits bears the burden of proving that because of her disability, she is unable to perform her prior work activity. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). Once the claimant establishes that she has such a disability, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other work and that jobs which she can perform exist in the national economy. *Id.*

The Commissioner has established a five-step process for determining whether a person is disabled:

(1) A person who is working is not disabled. 20 C.F.R. § 416.920(b).

(2) A person who does not have an impairment or combination of impairments severe enough to limit his ability to do basic work activities is not disabled. 20 C.F.R. § 416.920(c).

(3) A person whose impairment meets or equals one of the impairments listed in the "Listing of Impairments," 20 C.F.R. § 404, subpt. P, app. 1, is conclusively presumed to be disabled. 20 C.F.R. § 416.920(d).

(4) A person who is able to perform work he has done in the past is not disabled. 20 C.F.R. § 416.920(e).

(5) A person whose impairment precludes performance of past work is disabled unless the Secretary demonstrates that the person can perform other work available in the national economy. Factors to be considered are age, education, past work experience, and residual functional capacity. 20 C.F.R. § 416.920(f).

Judge Henry performed this sequential analysis, and found as follows: (1) Mr. Dustin had not engaged in any substantial gainful activity since the alleged onset of his disability; (2) he had severe impairments related to his mental disorders, which included major depressive disorder, psychosis, and antisocial personality disorder; (3) he did not have an impairment or combination of impairments that meets or equals the listings; (4) he had no past relevant work experience; but

(5) he was capable of performing jobs that exist in significant numbers in the national economy. (R. at 13-20.) Based on these findings, Judge Henry concluded that Mr. Dustin was not disabled under the Social Security Act. (R. at 21.)

### III. Mr. Dustin's Objections to Judge Henry's Ruling

Mr. Dustin believes that Judge Henry did not base her opinion on substantial evidence for three reasons. First, he argues that Judge Henry did not properly evaluate the medical opinion evidence, especially Dr. Smith's assessment of Mr. Dustin's limitations. Second, Mr. Dustin contends that Judge Henry failed to include the limitations listed by Dr. Smith and other treatment providers when she determined Mr. Dustin's residual functional capacity. Finally, Mr. Dustin asserts that Judge Henry failed to properly evaluate his subjective testimony.

#### A. Medical Opinion Evidence

Mr. Dustin contends that Judge Henry erred when she evaluated the evidence provided by his treating physician, Dr. Smith. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). An ALJ must give the opinion of a treating physician controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record. . . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* But even if not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 416.927." *Id.* These factors include the nature and extent of the treatment relationship, the evidence supporting a medical source's opinion, and the consistency of that opinion. 20

C.F.R. § 416.927(c)(2)-(4). An ALJ is not required to "apply expressly" all relevant factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258-59 (10th Cir. 2007). And a treating physician's opinion may be rejected if there is a discrepancy between a very restrictive functional assessment and contemporaneous examination findings. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002).

In the Mental Capacity Assessment that Dr. Smith filled out for Mr. Dustin on March 25, 2009, Dr. Smith wrote that Mr. Dustin had extreme limitations in a number of areas and concluded that Mr. Dustin would miss four or more days of work every month. Judge Henry found that Dr. Smith's evaluation was "entitled to some weight . . . [but not] substantial or controlling weight. His opinion is inconsistent with the information contained in the treatment records." Judge Henry supports her opinion by observing that "[t]he treatment records indicate that [Mr. Dustin's] mood disorder symptoms responded favorably to treatment with Celexa and he was consistently pleasant and cooperative when examined by Dr. Smith." Judge Henry also stated that Dr. Smith's opinions was "inconsistent with his March 25, 2009 statement that it would be great if the claimant could find a job working with computers."

Mr. Dustin argues that Judge Henry was overly selective in her review of the record and failed to note a number of instances when Mr. Dustin was not functioning well enough to work even when he was on Celexa. For instance, during his visit with Dr. Scoville on July 15, 2008, Mr. Dustin discussed his outburst at Workforce Services that occurred even though he was taking Celexa. Mr. Dustin also points to observations by Dr. Coates and Mr. Christensen noting Mr. Dustin's limitations during this time period. But the examples that Mr. Dustin cites occurred within the first few months after his hospitalization in June 2008. The reports from Dr. Smith

10

and other providers in later visits consistently indicate a good response to Celexa. These visits include appointments with Dr Scoville on August 15, 2008, Dr. Smith on September 3, 2008, Mr. Christensen on November 14, 2008, and Dr. Smith on March 25, 2009. Later visits that occurred after Dr. Smith filled out the Mental Capacity Assessment also indicate a positive response to this treatment. For instance, Mr. Dustin himself stated that Celexa was "quite effective" in an appointment with Dr. Smith on April 30, 2009. Looking at the medical evidence as a whole, it was reasonable for Judge Henry to find that the treating records did not support Dr. Smith's restrictive evaluation of Mr. Dustin's limitations.

Mr. Dustin also contends that Judge Henry should not have relied on Dr. Smith's comment about getting a job working with computers because she took this statement out of context. While Dr. Smith said that it would be nice if Mr. Dustin could get such a position, he did not opine on whether Mr. Dustin could maintain such a position. Mr. Dustin notes that Judge Henry herself found that Mr. Dustin could no longer perform this type of work. While the court agrees that Dr. Smith's comment is not a conclusive assessment of whether Mr. Dustin could maintain a job working with computers, the court finds that it was reasonable for Judge Henry to consider Dr. Smith's comment as evidence that Dr. Smith overstated some of Mr. Dustin's limitations. Dr. Smith's optimistic statement does appear to conflict with the restrictive assessment of Mr. Dustin's limitations that he made during the same appointment on March 25, 2009.

In any event, Judge Henry did not completely disregard Dr. Smith's opinion. She merely found that his opinion was not entitled to controlling or substantial weight. In addition to the reasons discussed above, Judge Henry also noted elsewhere in her opinion that the state medical

11

reviewers both asserted that Mr. Dustin could perform low stress unskilled work. This evaluation was inconsistent with the limitations provided by Dr. Smith in his Mental Capacity Assessment. For these reasons, the court finds that there is substantial evidence in the record to support Judge Henry's decision to give less weight to Dr. Smith's evaluation.

B.     Residual Functional Capacity

Mr. Dustin asserts that Judge Henry failed to include all of Mr. Dustin's impairments in his residual functional capacity for two reasons. First, Mr. Dustin argues that Judge Henry did not include the limitations mentioned by Dr. Smith in his Mental Capacity Assessment. But this argument is a restatement of the claims discussed above. Judge Henry provided reasons why she was giving Dr. Smith's evaluation some weight but not substantial weight. Because the court finds that her decision was supported by substantial evidence, there was no reason why Judge Henry needed to include all of Dr. Smith's limitations in her assessment of Mr. Dustin's residual functional capacity.

Second, Mr. Dustin contends that Judge Henry did not include all the limitations mentioned by Dr. Wallis, who was one of the state agency physicians that looked at Mr. Dustin's records. Dr. Wallis stated that Mr. Dustin could only perform work that was low stress, simple work with minimal public contact. Dr. Wallis also mentioned that Mr. Dustin had marked impairment in his ability to maintain social functioning and had moderate limits in his ability to concentrate for extended periods.

The court agrees that Judge Henry did not include the qualification that Mr. Dustin could only perform low stress work in Mr. Dustin's residual functional capacity. But Judge Henry did state that Mr. Dustin could perform only unskilled work requiring only occasional interactions

with coworkers, supervisors, or the public. It is unlikely that the addition of the words "low stress" to this description would have affected the vocational expert's evaluation of whether jobs existed in the national economy for individuals of Mr. Dustin's residual functional capacity. Similarly, it is unlikely that a greater emphasis on Mr. Dustin's inability to maintain social functioning would have affected Judge Henry's decision, since the vocational expert testified that the available jobs did not require an employee to have any interactions with the public. In any event, Dr. Wallis's ultimate assessment that Mr. Dustin could perform low stress unskilled or semi-skilled jobs with minimal public contact is consistent with Judge Henry's evaluation of Mr. Dustin's residual functional capacity. The court also notes that Dr. Cohn, the other state agency physician to examine Mr. Dustin's records, found that Mr. Dustin did not have marked limitations in any areas.

For these reasons, the court finds that Judge Henry's assessment of Mr. Dustin's residual functional capacity was reasonable and supported by substantial evidence.

C. Mr. Dustin's Testimony

Finally, Mr. Dustin argues that Judge Henry did not adequately take into account his subjective testimony. Credibility determinations are the province of the ALJ and should not be disturbed if supported by substantial evidence. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Nevertheless, the ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citation omitted).

Judge Henry found that Mr. Dustin's statements about the "intensity, persistence, and limiting effects" of his symptoms were not credible to the extent that they conflicted with her assessment of Mr. Dustin's residual functional capacity. (R. at 19.) Judge Henry supported her

conclusion with eight arguments, but Mr. Dustin contends that these arguments are not supported by the record. While the court agrees that a few of Judge Henry's arguments lack support, the court finds that her assessment on the whole is supported by substantial evidence.

First, Judge Henry found that Mr. Dustin's allegations and testimony were not supported by the objective medical evidence. Judge Henry noted that after Mr. Dustin's hospitalization in 2008, his symptoms improved and his suicidal thoughts subsided. Judge Henry stated that the medical evidence indicated that Mr. Dustin's psychiatric symptoms "remained stable with treatment since June 2008." (R. at 19.) The court finds that Judge Henry's opinion is supported by the record. Mr. Dustin's doctor visits since June 2008 consistently state that he is "doing better" and there was no evidence of any significant relapses or additional hospitalizations.

Second, Judge Henry discussed Mr. Dustin's use of Celexa. Mr. Dustin testified that he stopped taking Celexa about a month before the hearing with Judge Henry because he could not afford it. Judge Henry found that Mr. Dustin had not established that he was unable to obtain Celexa from sources in his community for a lower price or for free. The parties have not briefed whether Mr. Dustin bears the burden to demonstrate that he cannot obtain treatment for an affordable price, but the court finds that in any event this question is not relevant to an evaluation of Mr. Dustin's credibility.

Third, Judge Henry discredited Mr. Dustin's testimony because he stated that he had never abused any drugs besides marijuana. Judge Henry did not believe this statement because she found that the medical evidence indicated that he had a history of methamphetamine abuse. The court finds that the medical record does not necessarily indicate a history of abuse, but the record does contain evidence that Mr. Dustin was arrested for possession of marijuana and

14

methamphetamine. Given that Mr. Dustin failed to explain how he came to be arrested with methamphetamine if he was not using it, it was reasonable for Judge Henry to question the accuracy of Mr. Dustin's testimony that he had never abused any drugs besides marijuana.

Fourth, Judge Henry found that Mr. Dustin's statement that he played online computer games for eighteen hours a day called into question his testimony that he had a great deal of difficulty maintaining concentration and attention for extended periods of time. While Judge Henry did not make any inquiries into the type of games that Mr. Dustin played or how much attention they required, it was reasonable for her to find that a person must be able to maintain some concentration and attention to do any activity for such an extended period of time.

Fifth, Judge Henry noted that Mr. Dustin was once convicted of forgery, a crime involving dishonesty. Because the charge was from twenty years ago, the court finds that this evidence provides little support for Judge Henry's finding that Mr. Dustin's testimony was not reliable.

Sixth, Mr. Dustin testified that he experiences suicidal thoughts on a daily basis, but Judge Henry noted that the medical evidence does not demonstrate that he reported these thoughts to his mental health providers. The court agrees that Mr. Dustin did not mention suicidal thoughts on a daily basis during his follow-up appointments and finds that it was reasonable for Judge Henry to conclude that Mr. Dustin may have overestimated the frequency of these thoughts in his testimony.

Seventh, Judge Henry found that Mr. Dustin's assessment of his limitations was questionable given a statement he made to Dr. Rindflesh. Mr. Dustin told Dr. Rindflesh that he wanted to obtain disability benefits so that he could go to school and fine tune his computer

skills. While these goals are laudable, the court agrees that disability benefits are not appropriate for someone who plans to return to school. It was reasonable for Judge Henry to find that Mr. Dustin's statement cast doubt on his assertion that he was disabled.

Finally, Judge Henry found that Mr. Dustin's activities of daily living were inconsistent with his allegation of total disability. Mr. Dustin testified that he performed all of the household chores except for laundry and that he cooks and helps with the grocery shopping. The court agrees that these tasks, which require some memory and concentration, call into question Mr. Dustin's assertion that he has such extreme limitations that he is totally disabled.

Looking at the totality of evidence in the record, the court finds that there is substantial evidence to support Judge Henry's decision to discredit Mr. Dustin's testimony to the extent that his statements about his symptoms were inconsistent with Judge Henry's assessment of his residual functional capacity. The court does not agree with every reason that Judge Henry gave to support her decision. But there is substantial evidence in the record to support the most important observations on which Judge Henry's decision relies, such as the inconsistent medical evidence and Mr. Dustin's own statements about his daily activities and his desire to go back to school. The court therefore finds that Judge Henry adequately supported her decision to discredit Mr. Dustin's subjective testimony.

## CONCLUSION

For the reasons stated above, the court finds that Judge Henry's decision is supported by substantial evidence. Her ruling is therefore AFFIRMED.

DATED this 10th day of October, 2013.

>BY THE COURT:
>
>_____
>ROBERT J. SHELBY
>United States District Judge